UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JENNIFER JEROME,                                                    Case #:

                    Plaintiff,

        - against -                                    **VERIFIED COMPLAINT**

EXACTECH, INC. and EXACTECH, US,                                   **PLAINTIFF DEMANDS
                                                                   A TRIAL BY JURY**

                 Defendants.
----------------------------------------------------------------X

Plaintiff, **JENNIFER JEROME** brings this action for personal injuries suffered as a direct and proximate result of the misconduct of Defendants **EXACTECH, INC. and EXACTECH, US** (collectively "Defendants" or "Exactech") and demands a trial by jury.   In support of her Complaint, Plaintiff, by her attorneys, **DELL & DEAN, PLLC**, alleges upon information and belief as follows:

## INTRODUCTION

1.     This personal injury action relates to Exactech's misconduct with respect to its design, testing, manufacturing, packaging, storage, labeling, distribution, marketing or sale of the Optetrak, Optetrak Logic and Truliant Total Knee Arthoplasty ("TKA") Systems.[1]

2.      For many Americans, the solution to chronic or worsening knee or joint pain is to replace the joint in its entirety.   While most knee and joint replacements last for several years, Exactech's systems fail sooner and more often than others on the market.

3.     Exactech admits many of these premature and frequent failures are due to the improper packaging of the component part – the polyethylene insert – which exposes the part to oxygen, causing it to oxidize, and ultimately to deteriorate at an accelerated rate.   This

---

[1] For the sake of brevity, this Complaint will refer to the Truliant TKA and Vantage TAA Systems simply as "Truliant" and "Vantage," respectively, and to the Optetrak and Optetrak Logic TKA Systems simply as "Optetrak."

eventually leads to premature failure of the entire knee system.

4.      Because of Exactech's negligence, including its inadequate packaging of this component part, thousands of patients implanted with Exactech Systems have had to undergo (or likely will have to undergo) significant revision surgeries to remove and replace the defective devices.

5.      Indeed, Plaintiff was implanted with bilateral knee replacements, including a Exachtech Optetrak Logic System.    Right Sided implanted included a Size 3.5 femoral component, Size 2.5 tibial tray, 32-MM diameter three peg patella, 9-MM posterior stabilized polyethylene insert; left sided implants included a size 3 femoral component, size 2 tibial tray, size 32-MM diameter three peg patella, Size 9-MM posterior stabilized polyethylene insert, which all failed prematurely, resulting in the need for a revision surgery and future revision surgeries, and causing significant and continuing personal injuries as well as for Plaintiff to incur substantial medical bills and expenses.

6.      Accordingly, Plaintiff brings the instant suit, demands judgment against Exactech, and requests, among other things, compensatory damages, statutory damages, punitive damages, attorneys' fees and costs.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action pursuant to 28 U.S.C. 1332 because the amount in controversy exceeds the sum of **SEVENTY FIVE THOUSAND ($75,000.00) DOLLARS,** exclusive of interest and costs and because there is complete diversity of citizenship.

8.      This Court has personal jurisdiction over Exactech because each, through its respective employees, agents or sales representatives have transacted business in the State of New York and within the Eastern District of New York; solicited residents of the State of New York; and engaged in the misconduct described in Plaintiff's Complaint, upon information and

belief.    Accordingly, Defendants both have sufficient minimum contacts with the State of New York such that it does not offend traditional notions of fair play and substantial justice to have them answer for its misconduct in this Court.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because both Defendants transact and conduct business in the State of New York, a substantial part of the acts and omissions giving rise to this Complaint occurred in the Eastern District of the State of New York, including revision surgery, and because Plaintiff is a resident and citizen of Nassau County, New York.

## THE PARTIES

### Plaintiff

10.     Plaintiff **JENNIFER JEROME**, was and still is a resident of the State of New York, residing at 73 Lester Avenue, Freeport, County of Nassau, State of New York.

11.     Plaintiff was implanted with a , Plaintiff was implanted with bilateral knee replacements, including a Exachtech Optetrak Logic System.    Right Sided implanted included a Size 3.5 femoral component, Size 2.5 tibial tray, 32-MM diameter three peg patella, 9-MM posterior stabilized polyethylene insert; left sided implants included a size 3 femoral component, size 2 tibial tray, size 32-MM diameter three peg patella, Size 9-MM posterior stabilized polyethylene insert, which all failed prematurely,

12.     As a result of the failure of Exactech's system, Plaintiff had to undergo revision surgery, will have to undergo further revision surgeries, to receive physical therapy and to incur substantial medical bills and expenses beginning in 2012.

### Defendants

13.     Defendant Exactech, Inc. is a Florida corporation incorporated in Florida with its principal place of business located at 2320 NW 66th Court, Gainesville, Florida 32653.

14.     Defendant Exactech, Inc. designs, tests, develops, manufactures, labels packages, markets, distributes or sells orthopedic joint replacements throughout the United States, including the State of New York.

15.     At all relevant times, Defendant Exactech, Inc. was engaged in promoting, distributing, selling or otherwise introducing a Exachtech Optetrak Logic System; Right Sided implanted included a Size 3.5 femoral component, Size 2.5 tibial tray, 32-MM diameter three peg patella, 9-MM posterior stabilized polyethylene insert; left sided implants included a size 3 femoral component, size 2 tibial tray, size 32-MM diameter three peg patella, Size 9-MM posterior stabilized polyethylene insert, into interstate commerce throughout the United States, including the State of New York and generating substantial revenue as a result.

16.     Exactech, Inc. manufactured the bilateral implants implanted into implanted into Plaintiff on May 8, 2012.

17.     Defendant Exactech US, Inc. is a wholly owned subsidiary of Exactech, Inc. with its state of incorporation in Florida and its principal place of business located at 2320 NW 66th Court, Gainesville, Florida 32653.

18.     According to public filings, Defendant US, Inc., conducts Exactech's U.S. sales and distribution activities.

19.     Defendant Exactech US, Inc., is engaged in the business of promoting, distributing, selling, or otherwise introducing its knee replacement systems into interstate commerce throughout the United States, including in the State of New York, and generating substantial revenue as a result.

20.     The knee replacement systems manufactured by Defendant Exactech, Inc. were distributed by Defendant Exactech US, Inc. throughout the United States, including in New York, where Plaintiff received her knee replacements.

21.    Corporation Service Company at 1201 Hays Street, Tallahassee, Florida 32301 is a registered agent of or is authorized to accept service of process for both Exactech, Inc. and Exactech US, Inc.

## FACTUAL BACKGROUND

### Knee Replacements and Components

22.    Total knee arthroplasty or total ankle arthroplasty is a common Complaint for Damages and Demand for Jury Trial.   Orthopedic surgery that involves replacing the articular surfaces of the joint with smooth 1netal and highly cross-linked polyethylene plastic.[22]

23.    For example, in a total knee arthroplasty the femoral condyles and tibial plateau of the knee joint are replaced.



24.    Arthroplasty polyethylene inserts are the plastic liners placed between the two metallic surfaces in a fixed-bearing knee or ankle replacement. In essence, these polyethylene inserts serve as cushions---or shock absorbers-between the metal components in knee and ankle replacements.

### Exactech® Knee Polyethylene Inserts

25.    Exactech's total knee systems are classified as a knee joint patellofe1norotibial polymer/metal/polymer semi-constrained cemented prosthesis. They feature a mix of polyethylene

---

2 For illustrative purposes, below are diagrams of the knee joint.

and metal-based components.

26.     Exactech's total knee systems are comprised of the following parts: a femoral cap, a tibial tray, and sometimes a patellar cap. The patellar cap and tibial tray are both made of polyethylene.

### Properties of Polyethylene and its Use in TKA Systems

27.     Polyethylene is a polymer of ethylene-a hydrocarbon-which consists of as many as 200,000 ethylene repeat unites.   Ethylene is polymerized in the presence of catalysts to make ultra-high molecular weight polyethylene ("UHMWPE"), which is commercially produced as resin powder.   The resin powder is then consolidated into rods/sheets from which final inserts found in total knee replacements are made.

28.     Polyethylene is a significant element of TKAs, and its development has undergone considerable changes in the last thirty years.   While polyethylene is commonly used in TKAs, there are several concerns with *in vivo* use.   Specifically, polyethylene inserts cannot be exposed to oxygen during the packaging and storing process.   Exposing polyethylene inserts to oxygen creates a chemical reaction called oxidization, which causes the premature wear or degradation of polyethylene inserts.   As such, polyethylene inserts must be handled with a high degree of care when processed, packaged and stored.

29.     The oxidation process is time-dependent and can also occur before the liner is even implanted in a patient is the liner is exposed to air.   Thus airtight packaging is crucial and requires multiple barriers that adequately prevent oxidation.

30.     Wear characteristics of polyethylene are directly influenced by techniques of processing, storing and packaging methods.   These processes are significantly aimed at preventing the oxidation of the polyethylene inserts.   Proper packaging and storage prevent oxidation and reduce the risk of failure from strength changes in the polyethylene inserts.   Indeed,

preventing the oxidation of polyethylene through proper processing, storing and packaging methods directly prevents the wear of the polyethylene inserts.

31.    Wear of polyethylene is a direct cause of component loosening and other component failures.    Accordingly, the wear of polyethylene components is likely to cause severe complications, including swelling, grinding, instability, tissue damage, osteolysis, permanent bone loss and other injuries.    This ultimately causes the entire systems to fail and patients to need revision surgeries.

### *The Importance of Appropriate Packaging is Well-Understood*

32.    It is widely understood in the medical device industry that if polyethylene components are exposed to air, they will oxidize and degrade.    Accordingly, when manufactured and stored, polyethylene components must and should be packaged in multiple-layered, sufficiently oxygen-resistant vacuum-sealed bags.

33.    Indeed, throughout the medical device industry, precautions are taken to ensure polyethylene components are properly packaged to avoid oxidation.

34.    For example, the manufacturer Smith & Nephew, which began producing the Salto ankle systems in 2006, an ankle replacement system with polyethylene, uses a "double peel package" when sterilizing and packaging its ankle polyethylene products.

### *Exactech's False & Misleading Performance Claims*

35.    Upon information and belief, Exactech represented to doctors, patients and the general public that is flee of TKA systems were "excellent", high quality and reliable.    For example, its TKA marketing materials boasted:

"with a design developing for more than four decades and excellent clinical and laboratory results, surgeons can have confidence in a knee system that continues to demonstrate performance over time.    Surgeons around the world continue to documents excellent

long-term clinical results with the Optetrak family of products."

36.    Upon information and belief, Exactech's marketing materials similarly boasted low revision rates.

37.    Upon information and belief, Exactech's marketing materials did not disclose several investigations and ongoing claims that its TKA systems were, in fact, failing much sooner and at much higher rates than others on the market.

### Exactech 's History of TKA Performance Issues

38.    Upon information and belief, as early as 2012, Exactech was aware (or should have been aware) that its TKA systems were failing at a higher rate than promoted due to the oxygenation of the polyethylene components.

39.    For example, reports in the Manufacturer and User Facility Devise Experience (MAUDE) database in 2012 indicate instances of revision due to "loose tibial component", "aseptic loosening", "pain and visible loosening", "polyethylene deformation", "polyethylene wear", and "pain limited mobility, knee swelling and sensitivity" caused by loosening in the joint replacement.

40.    Additional examples from 2014 list "revision due to tibial loosening", "tibial loosening", "revision of [O]ptretrak knee components due to tibial loosening", "revision due to pain and loosening", and "revising of [O]ptetrak knee components due to tibial loosening", "revision due to pain and loosening", and "revising of [O]ptetrak knee components due to aseptic loosening", as well as several reports of "revision of knee components due to tibial loosening", and "revision of [O]ptetrak knee components reportedly due [to] aseptic loosening".

41.    And this experience was not unique to U.S. patients.    Upon information and belief, according to the 2020 Australian National Joint Replacement Registry, the rate of revision for a TKA utilizing an Optetrak tibial component with a Optetrak-CR femoral component was 8.5% at

10 (10) years and 10.2% at (10) years when implanted with a Optetrak-PS femoral component; both rates far exceed international guidelines for acceptable revision rates, upon information and belief.

42.     Likewise, upon information and belief, accord the Australian Orthopaedic Association has remarked that the Optetrak TKA Systems have a "higher-than-expected" rate of revision.

43.     Upon information and belief, per the recommendations established by the International Benchmarking Working Group and applied by the Australian Orthopaedic Association, the Optetrak TKA Systems do notn qualify for a "superiority benchmark" or even a "non-inferiority benchmark" because of its high failure rate.

### Exactech Was Aware Of The Problem, But Did Nothing

44.     Upon information and belief, it is widely recognized and accepted in the medical device industry that reported AERs represent only a small fraction of adverse events associated with and/or caused by a particular device.

45.     Despite Exactech's knowledge of early onset failures of its TKA systems, Exactech continued to design, warrant, manufacture, promote, sell and distribute them without altering surgeons or patients of its potential increased risks of early onset failures.

46.     Exactech never changed the labeling, marketing materials or product inserts to adequately and accurately warn patients or doctors of the associated increased risks of early failure due to loosening or polyethylene wear.

47.     Exactech did, however, quietly – and without providing information or explanation for its decision to patients, doctors or the general public – begin replacing the tibial trays of some Optetrak models.

***Recent Exactech Recall***

48.    Finally, in August 2021, Exactech recalled a limited nunber of its TKA systems.

49.    Upon information and belief, Exactech notified distributors and sales representatives of the limited recall on approximately August 30, 2021, in a letter entitled 'URGENT MEDICAL DEVICE RECALL.'   In part, the letter clarified that Exactech was "removing all Knee and Ankle UHMWPE products labeled with an 8-year shelf life and not packaged in EVOH/Nylon bags, in a phased approach over 12 months."3

50.    Upon information and belief, the actions and timing as to each phase was described as follows:

**Phase 1:**   immediately return all knee and ankle UHMWPE devices labeled with an 8-year shelf life that will be 5 years old or older by 08/31/2022 not packaged in EVOH/Nylon bags.

**Phase 2:**   between 05/31/2022 to 08/31/2022, returning all remaining knee and ankle UHMWPE devices labeled with an 8-year shelf life not packaged in EVOH/Nylon bags."4

51.    Notably, Exactech did not issue any communications to surgeons who had implanted Optetrak, Truliant or Vantage Systems with a recalled polyethylene component.

52.    Exactech did not issue any communications to patients who had received an Optetrak, Truliant or Vantage Systems with a recalled polyethylene component.

53.    In fact, it took nearly six (6) months for Exactech to notify patients, doctors and the public that its Optetrak, Truliant or Vantage Systems were defective and contained faulty

---

3  See U.S. Poon & DRUG ADMIN., Class 2 Device Recall OPTETRAK Comprehensive Knee System (Oct. 04, 2021) https://www .accessdata.fda.gov/scripts/cdrh/cfdocs/cfRES/res.cfm?id= 189015
4  See U.S. Poon & DRUG ADMIN., Class 2 Device Recall OPTETRAK Comprehensive Knee System (Oct. 04, 2021) https://www .accessdata.fda.gov/scripts/cdrh/cfdocs/cfRES/res.cfm?id= 189015

polyethylene liners.

54.    On February 7, 2022, Exactech issued an "Urgent Medical Device Correction" in which it informed healthcare professionals that:

> After extensive testing, we have confirmed that most of our inserts manufactured since 2004 were packaged in out-of-specification (referred to hereafter as "non-conforming") vacuum bags that are oxygen resistant but do not contain a secondary barrier layer containing ethylene vinyl alcohol (EVOH) that further augments oxygen resistance. The use of these non-conforming bags may enable increased oxygen diffusion to the UHMWPE (ultra-high molecular weight polyethylene) insert, resulting in increased oxidation of the 1naterial relative to inse1is packaged with the specified additional oxygen barrier layer. Over time, oxidation can severely degrade the mechanical properties of conventional UHMWPE, which, in conjunction with other surgical factors, can lead to both accelerated wear debris production and bone loss, or component fatigue cracking/fracture, all leading to corrective revision surgery.[5]

55.    The "Urgent Medical Device Correction" clarified that Exactech was expanding its recall to now include all knee arthroplasty polyethylene inserts packed in on-conforming bags regardless of label or shelf life.

56.    The components subject to the recall now included:  OPTETRAK:  All-polyethylene CR Tibial Components, All-polyethylene PS Tibial Components, CR Tibial Inserts, CR Slope Tibial Inserts, PS Tibial Inserts, HI-FLEX PS Tibial Insers; OPTETRAK Logic:   CR Tibial Inserts, CR Slope Tibial Inserts, CRC Tibial Inserts, PS Tibial Inserts, PSC Tibial Inserts,

---

5 See Exactech's "Urgent Medical Device Correction" letter, dated Feb. 7, 2022, available online at: https://www.exac.com/wp-content/uploads/2022/02/Exactech-DHCP letter.02.07.2022.pdf.

CC Tibial Inserts; TRULIANT:   CR Tibial Inserts, CR Slope Itibial Inserts, CRC Tibial Inserts, PS Tibial Insers, PSC Tibial Inswers; and VANTAGE Fixed-Bearing Liner Components.6

57.     In its February 7, 2022 correspondence, Exactech advised surgeons that revision surgery should be considered for patients who exhibited symptoms consistent with premature polyethylene wear, like "new or worsening pain, inability to bear weight, grinding or other noise, swelling or [joint] instability.

### PLAINTIFF'S FAILED IMPLANT & SUBSEQUENT REVISION SURGERY

58.     On July 22, 2021, Plaintiff JENNIFER JEROME, underwent a revision of left total knee replacement all components by Dr. Keith Reinhardt at South Shore University Hospital, Bay Shore, NY.

59.     Both of Plaintiff's implants failed on or about July 22, 2021.

60.     Plaintiff is indicated for revision of right total knee replacements.

61.     Because she required an additional revision surgery and will be required to undergo further revision surgery, Plaintiff has suffered significant and continuing personal injuries, is limited in her activities of daily living, requires additional physical therapy and has incurred substantial medical bills and expenses.

62.     As a direct, proximate and legal consequence of the defective nature of the Optetrak TKA System, Plaintiff has suffered and continues to suffer significant, permanent and continuing personal injuries, as described herein.

### EQUITABLE TOLLING OF STATUTE OF LIMITATIONS

63.     Exactech willfully, wantonly, or intentionally withheld information from Plaintiff, Plaintiffs healthcare providers, and the public concerning the known hazards associated with its Optetrak, Truliant, and Vantage Systems.

---

6 *Id.*

64.     Exactech willfully, wantonly, or intentionally withheld safety-related warnings from Plaintiff, Plaintiffs healthcare providers, and the public concerning the known hazards associated with its Optetrak, Truliant, and Vantage Systems.

65.     Exactech willfully, wantonly, or intentionally withheld instructions from Plaintiff, Plaintiffs healthcare providers, and the public regarding how to identify, mitigate, or treat known hazards associated with its Optetrak, Truliant, and Vantage Systems.

66.     Exactech willfully, wantonly, intentionally conspired, and acted in concert to ignore relevant safety concerns and deliberately not study the long-term safety and efficacy of its Optetrak, Truliant, and Vantage Systems, including the polyethylene liners used in its Optetrak, Truliant, and Vantage Systems.

67.     Exactech failed to disclose a la1own defect in its design, packaging, or delivery of its Optetrak, T1uliant, and Vantage Systems, including the polyethylene liners used in its Optetrak, Truliant, and Vantage Systems, and instead affirmatively misrepresented that its TKA and TAA systems were as safe as--or even "superior" to--other c01nparable TKA and TAA systems on the market.

68.     Due to the absence of any warning or other information by Exactech as to the significant health and safety risks posed by its Optetrak, Truliant, and Vantage Systems-1nore specifically, the polyethylene liners used in its Optetrak, Truliant, and Vantage Systems-Plaintiff was unaware that his TKA contained a faulty liner, which was likely to cause a pre1nature failure of the entire joint replacement system. Additionally, this danger was not la10wn to Plaintiffs healthcare providers or to the general public.

69.     Given Exactech's deliberate actions designed to deceive or mislead Plaintiff, Plaintiffs healthcare providers, and the general public with respect to the safety and efficacy ofExactech's TKA and TAA systems, Defendants are estopped from relying on any statute of

limitations defenses.

## **Count I: Strict Liability - Manufacturing Defect**

70.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

71.     At all relevant times, Exactech designed, tested, developed, manufactured, labeled, packaged, marketed, distributed, or sold the Optetrak, Truliant, and Vantage Systems for implantation into patients, such as Plaintiff, by orthopedic surgeons in the United States.

72.     Exactech had a duty to manufacture, pack, and distribute the Optetrak, Truliant, and Vantage Systems, including their component parts, in a manner that prevented unreasonable risk of harm or injury to patients, including Plaintiff.

73.     Exactech knew (or reasonably should have known) that its Optetrak, Truliant and Vantage Systems were defective as manufactured.

74.     The Optetrak, Truliant and Vantage Systems, as manufactured, were not reasonably safe as manufactured, packaged or distributed by Exactech.

75.     The Optetrak, Truliant and Vantage Systems, including their component parts, were defective as manufactured because Exactech:

a.     packaged the polyethylene components of the Optetrak, Truliant, and Vantage Systems in vacuum bags that contained a secondary barrier layer containing ethylene vinyl alcohol (EVOH) to prevent the components from oxidizing before they were implanted;

b.     selected materials to package the Optetrak, Truliant, and Vantage Systems, which were of an inferior grade or quality;

c.     failed to set appropriate manufacturing specifications to ensure that the Optetrak, Truliant, and Vantage Systems performed safely, appropriately, and as intended;

d.      failed to periodically test to ensure that the Optetrak, Truliant, and Vantage Systems as manufactured met Exactech's intended specifications;

e.      failed to establish internal quality control protocols and procedures to ensure that the Optetrak, Truliant, and Vantage Systems as manufactured met Exactech's intended specifications;

f.      failed to comply with internal quality control protocols and procedures to ensure that the Optetrak, Truliant, and Vantage Systems as manufactured met Exactech's intended specifications;

g.      failed to take corrective actions to eliminate or minimize further failures of the Optetrak, Truliant, and Vantage Systems;

h.      failed to select appropriate third-parties to package the polyethylene inserts used in the Optetrak, Truliant, and Vantage Systems;

i.      failed to properly supervise and monitor the packaging of the polyethylene inserts used in the Optetrak, Truliant and Vantage Systems; and

j.      were otherwise negligent in the manufacture, packaging, or distribution of the Optetrak, Truliant and Vantage Systems.

76.     The manufacturing defects in the Optetrak, Truliant and Vantage Systems existed when the devices left Exactech's control.

77.     Plaintiff's doctors implanted the Optetrak, Truliant or Vantage Systems in the manner in which it was intended and recommended to be used, making such use reasonably foreseeable to Exactech.

78.     The Opetrak, Truliant and Vantage Systems, including their component parts, which were manufactured, packaged, or distributed by Exactech, reached patients, like Plaintiff, without substantial change in condition.

79.     Plaintiff could not, by the exercise of reasonable care, have discovered the manufacturing defect and perceived its dangers or avoided injury.

80.     Exactech are strictly liable for the defective manufacture of its Opetrak, Truliant and Vantage Systems, the distribution, marketing or of the defectively manufactured Optetrak, Truliant and Vantage Systems and the injuries sustained by Plaintiff.

81.     As a direct and proximate result of one or more of these wrongful acts or omissions of Exactech, Plaintiff suffered profound injuries that are permanent and continuing in nature.   These injuries required medical treatment and will require ongoing medical treatment, resulting in significant past and future medical expenses.   Additionally, Plaintiff suffered and will Continue to suffer economic losses, loss of normal life and physical and mental pain and suffering.

82.     **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with pre-judgment and post-judgment interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## <u>Count II: Strict Liability - Design Defect</u>

83.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

84.     At all relevant times, Exactech designed, tested, developed, manufactured, labeled, packaged, marketed, distributed or sold the Optetrak, Truliant and Vantage Systems for implantation into patients, such as Plaintiff, by orthopedic surgeons in the United States.

85.     Exactech had a duty to develop, design and test both the Optetrak, Truliant and Vantage Systems and their component parts, including the respective packaging of each, to produce a product that did not present an unreasonable risk of harm or injury to patients,

including Plaintiff.

86.     Exactech knew (or reasonably should have known) that the Optetrak, Truliant and Vantage Systems, as designed, presented an unreasonable risk of harm or injury to patients, including Plaintiff.

87.     Exactech knew (or reasonably should have known) that the Optetrak, Truliant and Vantage Systems were not reasonably safe for its expected, intended, or foreseeable uses as designed by Exactech.

88.     As alleged herein, Exactech knew or had reason to know that the Optetrak, Truliant and Vantage Systems caused an increased risk of harm to patients, like Plaintiff, due to the Optetrak, Truliant and Vantage Systems' propensity to undergo substantial early polyethylene wear, component loosening or other failure causing serious complications, including grinding, welling, tissue damage, instability, osteolysis, bone loss and other injuries, as well as the need for revision surgery in patients.

89.     The Optetrak, Truliant and Vantage Systems, including their component parts and corresponding packaging, were defective as designed because Exactech:

a.      developed the Optetrak, Truliant, and Vantage Systems in a manner which resulted in a propensity to undergo substantial early polyethylene wear, component loosening, or other failure modes;

b.      failed to design the packaging for the polyethylene components of the Optetrak, Truliant, and Vantage Systems in vacuum bags that contained a secondary barrier layer to prevent the components from undergoing increased oxidation;

c.      designed the packaging of the Optetrak, T1uliant, and Vantage Systems and their component parts to require materials which were of an inferior grade or quality;

d.      failed to conduct adequate testing on component parts, subassemblies, or finished

Optetrak, Truliant, and Vantage Systems as packaged and distributed;

e.      failed to test an adequate number of samples of Optetrak, Truliant, and Vantage Systems on an ongoing basis to ensure they were safe and performed as designed;

f.      failed to take adequate steps to specifically identify failure modes with the Optetrak, T1uliant, and Vantage Systems with clarity and to suggest methods to monitor, avoid, or prevent further failures;

g.      failed to identify or note the significance of any testing that resulted in failures of the Optetrak, Tn11iant, and Vantage Systems;

h.      failed to take corrective actions to eliminate or minimize further failures of the Optetrak, Truliant, and Vantage Systems;

i.      failed to adequately design packaging specifications for the components, subassemblies, or the finished Optetrak, Truliant and Vantage Systems;

j.      designed the polyethylene insert and packaging in a manner that increased the risk of users and patients suffering from pain, discomfort, injury and the need for revision surgery; and

k.      were otherwise negligent in the development, design or testing of the Optetrak, Truliant and Vantage Systems.

90.     The design defects in the Optetrak, Truliant and Vantage Systems and its packaging existed when the devices left Exactech's control.

91.     Plaintiff's doctors implanted the Optetrak, Truliant or Vantage System in the manner intended, making such use reasonably foreseeable to Exactech.

92.     The Optetrak, Truliant or Vantage Systems as designed by Exactech reached Plaintiff and other patients without substantial change in its condition.

93.     The Optetrak, Truliant and Vantage Systems and their packaging as designed

carried risks that were outweighed by any utility of the design of the devices and packaging because when paired together with the devices, the Optetrak, Truliant and Vantage Systems were dangerous to an extent beyond that which would be contemplated by the ordinary consumer.

94.     The Optetrak, Truliant or Vantage Systems and their packaging were defective in design and unreasonably dangerous when they entered the stream of commerce and received by Plaintiff, because the foreseeable risks exceeded or outweighed the purported benefits associated with the devices.

95.     Feasible safer alternative designs providing the same functional purpose were available to Exactech at the time the Optetrak, Truliant and Vantage Systems were designed and packaged and offered for sale in the market.

96.     For example, Exactech could have utilized vacuum bags containing a secondary barrier layer containing ethylene vinyl alcohol (EVOH), like other manufacturers in the industry do, to prevent the polyethylene components from undergoing increased oxidation.

97.     At no time did Plaintiff (or Plaintiff's doctors) have any reason to believe that the Optetrak, Truliant or Vantage Systems and their packaging were in a condition not suitable for proper and intended use.

98.     Plaintiff could not, by the exercise of reasonable care, have discovered these design defects and perceived its dangers or avoided injury.

99.     Exactech are strictly liable for the defective design of the Optetrak, Truliant and Vantage Systems and their component parts, including the respective packaging of each.

100.    As a direct and proximate result of one or more of these wrongful acts or omissions of Exactech, Plaintiff suffered profound injuries that are permanent and continuing in nature.   These injuries required medical treatment and will require ongoing medical treatment, resulting in significant past and future medical expenses.   Additionally, Plaintiff suffered and

will continue to suffer economic losses, loss of normal life and physical and mental pain and suffering.

101.    **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with pre-judgment and post-judgment interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

### Count III: Strict Liability – Failure To Warn

102.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

103.    At all relevant times, Exactech designed, tested, developed, manufactured, labeled, packaged, marketed, distributed or sold the Optetrak, Truliant and Vantage Systems for implantation into patients, such as Plaintiff, by orthopedic surgeons in the United States.

104.    Exactech had a duty to provide adequate warning and instructions regarding the Optetrak, Truliant and Vantage Systems (and their use) so that its TKA and TAA systems did not present an unreasonable risk of harm or injury to patients, including Plaintiff.

105.    Exactech knew or reasonably should have known and been aware that the Optetrak, Truliant and Vantage Systems and its packaging contained inadequate warnings and instructions.

106.    The Optetrak, Truliant and Vantage Systems and their corresponding packaging are not reasonably safe as labeled, distributed, marketed, delivered or sold by Exactech.

107.    The Optetrak, Truliant or Vantage Systems were defective and unreasonably dangerous when they entered the stream of commerce and were received by Plaintiff and Plaintiff's doctors, because the warning in the instructions for use, operative techniques, directioons, marketing and promotional materials, advertisements, white papers and other

communicatiosn provided by Exactech or its sales force to doctors and patients with or about the Optetrak, Truliant and Vantage Systems failed to adequately convey the potential risks and side effects of the Optetrak, Truliant and Vantage Systems and the dangerous propensities of the devices, which risks Exactech knew (or reasonably should have known).

108.   Exactech further failed to adequately disclose the devices' propensity to undergo substantial early polyethylene wear, component loosening or other failure causing serious complications, including grinding, swelling, tissue damage, instability, osteolysis, bone loss and other injuries, as well as the need for revision surgery in patients.

109.   The instructions for ruse, operative techniques, directions, marketing and promotional materials, advertisements, white papers and other communications regarding the Optetrak, Truliant or Vantage Systems were additionally defective because they did not provide instructions concerning how – if at all- the risks associated with the Optetrak, Truliant or Vantage Systems could be avoided, minimized, detected or treated.

110.   The inadequate warnings for the Optetrak, Truliant and Vantage Systems existed when the devices left Exactech's control.

111.   Plaintiff's knee systems reach Plaintiff (and Plaintiff's doctor) without substantial change in its condition.

112.   Plaintiff's doctor following the instructions provided by Exactech with regard to the implantation of his knee systems.

113.   Plaintiff (and Plaintiff's doctor) could not, by the exercise of reasonable care, have discovered these defects and perceived its dangers or avoided injury.

114.   Exactech are strictly liable for providing inadequate warnings accompanying the Optetrak, Truliant and Vantage Systems and their component parts, including the respective packaging of each.

115.    As a direct and proximate result of one or more of these wrongful acts or omissions of Exactech, Plaintiff suffered profound injuries that are permanent and continuing in nature.   These injuries required medical treatment and will require ongoing medical treatment, resulting in significant past and future medical expenses.   Additionally, Plaintiff suffered and will continue to suffer economic losses, loss of normal life and physical and mental pain and suffering.

116.    **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with pre-judgment and post-judgment interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## Count IV: Negligence

117.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

118.    Exactech designed, tested, developed, manufactured, labeled, packaged, marketed, distributed or sold the Optetrak, Truliant and Vantage Systems for implantation into patients, such as Plaintiff, by orthopedic surgeons in the United States.

119.    At all relevant times, Exactech had a duty to exercise reasonable care in its design, manufacture, labeling, distribution and sale of its Optetrak, Truliant and Vantage Systems.

120.    As a medical device manufacturer, Exactech owed this duty of reasonable care not only to patients, like Plaintiff, but also to doctors, like Plaintiff's doctor.

121.    At all relevant times, and as discussed above, Exactech knew (or reasonably should have known) of the hazards, risks and dangers of the Optetrak, Truliant and Vantage Systems.

122.    Exactech knew (or reasonably should have known) that its misconduct with respect to the Optetrak, Truliant and Vantage Systems was likely to cause harm in patients like Plaintiff.

123.    As described above, Exactech failed to exercise reasonable care with respect to its design, manufacture, labeling, distribution and sale of its Optetrak, Truliant and Vantage Systems.   More specifically, Exactech failed to:

      a.    reasonably and appropriately manufacture the Optetrak, Truliant, and Vantage Systems so to avoid an unreasonable risk of harm to patients;

      b.    reasonably and appropriately package the Optetrak, Truliant, and Vantage Systems so to avoid an unreasonable risk of harm to patients;

      c.    reasonably and appropriately distribute and store the Optetrak, Truliant, and Vantage Systems so to avoid an unreasonable risk of harm to patients;

      d.    reasonably and appropriately design the Optetrak, Truliant, and Vantage Systems so to avoid an unreasonable risk of harm to patients;

      e.    reasonably and appropriately label the Optetrak, Truliant, and Vantage Systems so to avoid an unreasonable risk of harm to patients; and

      f.    were otherwise negligent.

124.    As a direct and proximate result of one or more of these wrongful acts or omissions of Exactech, Plaintiff suffered profound injuries that are permanent and continuing in nature.   These injuries required medical treatment and will require ongoing medical treatment, resulting in significant past and future medical expenses.   Additionally, Plaintiff suffered and will continue to suffer economic losses, loss of normal life and physical and mental pain and suffering.

125.    **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in

Plaintiff's favor for compensatory and punitive damages, together with pre-judgment and post-judgment interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## **PUNITIVE DAMAGES**

126.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

127.    Exactech's misconduct described herein consisted of gross negligence, recklessness, oppression, fraud, or malice, and was done with advance knowledge, willful and wanton disregard for the safety and health of Plaintiff and others, or ratification by Exactech's officers, directors or managing agents.

128.    Despite its knowledge that the Optetrak, Truliant and Vantage Systems were failing at higher rates and causing serious injuries, Exactech chose profits over the safety of patients when they sold and marketed a devise posing significant health risks.

129.    Despite having sufficient knowledge to appreciate the risks related to the propensity of Exactech's Optetrak, Truliant and Vantage Systems to fail – which Exactech knew was likely to result in serious injuries – Exactech intentionally and recklessly failed to warn patients, doctors or the general public.

130.    Despite having sufficient knowledge to appreciate the risks related to the propensity of Exactech's Optetrak, Truliant and Vantage Systems to fail – which Exactech knew was likely to result in serious injuries – Exactech chose not to initiate a recall until recently.

131.    Exactech's decisions with respect to its defective TKA and TAA systems who a conscious indifference to the health and safety of millions of patients.

132.    Instead of deciding to better understand this failure and to warn the public, Exactech downplayed and recklessly disregarded its knowledge of the defective nature of the

Optetrak, Truliant and Vantage Systems' potential for causing serious injuries.

133.    Instead of releasing truthful information, correcting the defect, or providing adequate warnings, Exactech chose to instead disseminate misleading information regarding the safety (and failure rates) of its TKA and TAA systems in an effort to mislead patients, doctors and the public.

134.    As a result of Exactech's own misconduct, both Exactech, Inc. and Exactech US, Inc. are liable for punitive damages in an amount to be determined by a jury.

**PRAYER FOR RELIEF**

135.    Plaintiff respectfully requests the following damages be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate Plaintiff:

    a.    Plaintiffs medical expenses, physical pain and suffering, and other compensatory damages to be proven at trial;

    b.    Damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, loss of consortium, and other non-economic losses sustained as a result of Exactech's misconduct;

    c.    Past, present, and future out-of-pocket costs, lost income, revenue, profits, or business opportunity, lost earning capacity, and costs related to 1nedical treatment which have or may be recommended for Plaintiff;

    d.    Attorney's fees, expenses, and recoverable costs incurred 111 connection with this action;

    e.    Plaintiffs Loss of Enjoyment of Life;

    f.    Pre- and Post-Judgment Interest; and

g.      Such other relief to which Plaintiff may be justly entitled.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury on all counts and as to all issues.


Dated: Garden City, New York
         March 2, 2023

                                        Yours, etc.

                                        _____
                                        JAY J. MASSARO (JM 7924)
                                        DELL & DEAN, PLLC
                                        Attorneys for Plaintiff
                                        JENNIFER JEROME
                                        1225 Franklin Avenue, Suite 450
                                        Garden City, New York 11530
                                        (516) 880-9700
                                        File No. 5504